UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| v.                                ) | No. 2:26-mj-00025-KFW-1 |
| ) | |
| **JAIME CASTRO-LEMA,**           ) | |
| ) | |
| **Defendant**               ) | |

## ORDER

The Defendant, Jaime Castro-Lema, was charged by complaint on January 22, 2026, with reentry by a removed alien in violation of 8 U.S.C. § 1326. ECF No. 2. On January 29, 2026, this matter was presented for a preliminary hearing pursuant to Fed. R. Crim. P. 5.1 and 18 U.S.C. § 3060. Through counsel, Castro-Lema argued that discrepancies in the date of his prior removal from the United States undermined the reliability of the complaint and its supporting affidavit. The complaint listed July 24, 2014, while the affidavit listed July 14, 2014, as the date of removal. ECF Nos. 2, 2-1. The Government requested a continuance to review documents Castro-Lema provided in support of his argument. Over Castro-Lema's objection, I continued the hearing to February 2, 2026.

On February 2, the Government offered exhibits in support of the probable cause affidavit. The first exhibit contains a record identifying Castro-Lema as a deportable or inadmissible alien, an arrest narrative, a post-arrest interview transcript, and a 2026 warrant of removal. Government's Ex. 1B. The second exhibit documents Castro-Lema's original removal in 2014, showing that he was removed on

September 24, 2014.  Government's Ex. 2A.  The third exhibit provides a criminal history suggesting Castro-Lema's first removal dated July 24, 2014, and reflects his January 2026 arrest for reentry.  Government's Ex. 3.  While conceding that the rules of evidence do not strictly apply at a preliminary hearing, *see* Fed. R. Evid. 1101(d)(3), Castro-Lema objected to these exhibits, arguing that the Government had rested on January 29 and the record was closed.  I admitted the exhibits over objection because neither party had concluded their presentations on January 29, and the Government offered them to rebut Castro-Lema's argument from the initial hearing.

Although the parties disagree on the scope of Castro-Lema's argument,[1] the core issue regarding the Court's role at this stage is clear.  The preliminary hearing serves only to determine whether probable cause exists for the charged offense.  *See Coleman v. Burnett,* 477 F.2d 1187, 1201 (D.C. Cir. 1973) ("The preliminary hearing is not a minitrial of the issue of guilt . . . ."); *Barber v. Page,* 390 U.S. 719, 725 (1968) (noting that a preliminary hearing's "function is the more limited one of

---

[1] Initially, on January 29, 2026, Castro-Lema argued that due process requires the Court to direct the Government to provide purported impeachment material in advance of the preliminary hearing regarding the affiant and another agent present during the arrest.  *See Brady v. Maryland*, 373 U.S. 83, 87-88 (1963); *Giglio v. United States*, 405 U.S. 150, 154-55 (1972).  In its memorandum, the Government argued that there is no duty to produce impeachment material for a preliminary hearing.  *See* ECF No. 18.  Castro-Lema responded that he was not seeking production of impeachment material but rather wanted the Government to certify whether it had inquired regarding the credibility of the affiant.  Ultimately, Castro-Lema's argument and its evolution over the course of the preliminary hearing do not affect the probable cause determination.  *See Morris v. Boyd*, No. 00-1249, 2000 WL 1720621, at *3 (6th Cir. Nov. 7, 2000) ("The prosecution's requirement to disclose exculpatory evidence to the defendant does not extend to the probable cause phase of the prosecution.").  And it is not the Court's role to assess credibility at the probable cause stage.  *See Gerstein v. Pugh*, 420 U.S. 103, 121 (1975) ("[Probable cause] does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands, and credibility determinations are seldom crucial in deciding whether the evidence supports a reasonable belief in guilt."); *United States v. Bowie*, No. 1:14–MJ–0189PAS, 2014 WL 4542974, at *1 (D.R.I. Sept. 12, 2014) (during a preliminary hearing "[i]t is generally inappropriate for the magistrate judge to make credibility determinations, which fall within the province of the jury as the trier of fact.").

determining whether probable cause exists to hold the accused for trial"). Probable cause exists when "at the time of the arrest, the facts and circumstances known to the arresting officers were sufficient to warrant a reasonable person in believing that the individual had committed or was committing a crime." *United States v. Gomez*, 716 F.3d 1, 7 (1st Cir. 2013).

At this stage, probable cause requires information to support a reasonable person believing that the defendant (1) is an alien,[2] (2) was previously removed from the United States, and (3) reentered the United States without express consent from the Attorney General to reapply for admission. 8 U.S.C. § 1326. In this case, the arresting agents approached Castro-Lema. ECF No. 2-1 at 2-3. One of the agents inquired about Castro-Lema's country of origin. *Id.* at 3. Castro-Lema responded that he was from Ecuador and, when questioned further, stated that he did not have documents establishing his legal right to be in the United States. *Id.* A search of United States Department of Homeland Security records showed that Castro-Lema had a previous removal order in 2013 and was arrested and removed from the country on September 24, 2014.[3] Government's Ex. 2A.

There is a discrepancy in the date of removal: the complaint, affidavit, and warrant of removal each list a different date in 2014.[4] ECF Nos. 2, 2-1; Government's Ex. 2A. Therefore, the question is whether this discrepancy undermines the affidavit

---

[2] "Alien" is defined as "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3).
[3] Castro-Lema argued that there may be irregularities with the process he received during his 2014 removal. Potential irregularities, however, do not affect probable cause, as Castro-Lema's statements confirm his removal in 2014 and his reentry in 2016 without authorization. *See* Government's Ex. 1B.
[4] The Government concedes error with respect to the date of removal.

3

such that it fails to support probable cause. It does not. *See, e.g., United States v. Strusinski*, No. 13–135(1) (DWF/TNL), 2013 WL 6276380, at *5 (D. Minn. Dec. 4, 2013) ("The Eighth Circuit has previously stated that inconsistency in the dates of warrants 'does not eliminate probable cause.'" (quoting *United States v. White*, 356 F.3d 865, 869 (8th Cir. 2004)). Here, probable cause exists regardless of when Castro-Lema was first removed. When agents initially approached him, Castro-Lema stated he was from Ecuador and did not have documentation establishing his legal right to be in the United States. ECF No. 2-1. In a post-*Miranda* interview, he explained that he last entered the United States in 2016 and, when asked if he had ever been removed, responded, "Not recently but I was the first time," and indicated that he reentered the United States through Texas. Government's Ex. 1B. He also told the agent that he never applied to the Attorney General for permission to reenter. *Id.*

Regardless of the three different removal dates, Castro-Lema's statements and interview provide reliable evidence establishing probable cause that he committed the offense of reentry of a removed alien in violation of 8 U.S.C. § 1326. Therefore, I **FIND** probable cause that Jaime Castro-Lema committed the charged offense.

Dated: February 6, 2026

/s/ Karen Frink Wolf
United States Magistrate Judge